# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**RONALD MARTINEZ-TORRES,**

    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

Civil No. 16-1538 (BJM)

## OPINION AND ORDER

Ronald Martinez-Torres ("Martinez") seeks review of the Commissioner's decision finding he is not entitled to disability benefits under the Social Security Act ("Act"), 42 U.S.C § 423, as amended. Martinez asks for judgment remanding the case to the Commissioner for further proceedings. (Docket Nos. 2, 15). The Commissioner answered the complaint and filed a memorandum. (Docket Nos. 13, 16). This case is before me on consent of the parties. (Docket No. 10). After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different

conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through which the Administrative Law Judge ("ALJ") assesses the claimant's residual functional capacity ("RFC") and determines whether the impairments prevent the claimant from doing the work he has performed in the past. An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work

available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Martinez (who did not finish high school or independent studies, does not understand English, and worked in maintenance for ten years) applied for disability insurance benefits on March 14, 2012, claiming disability since August 10, 2006 (alleged onset date) at the age of 26[1] due a back injury and an emotional condition. Social Security Transcript ["Tr."] 33, 52, 73, 293, 389, 418. He last met the insured status requirements of the Act on December 31, 2010 (date last insured). Tr. 293. The claim was denied initially and on reconsideration. Tr. 52, 292. A hearing before an ALJ was held on June 13, 2014. Tr. 30-46. On September 3, 2014, the ALJ found that through the date last insured, and considering Martinez's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Martinez could perform. Tr. 13-25. Martinez requested review of the ALJ's decision, and on February 5, 2016, the Appeals Council denied Martinez's request, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-6. The present complaint followed. Docket No. 2.

The record contains evidence of treatment for back pain and high blood pressure by the State Insurance Fund and Centro San Cristobal. Martinez also received mental health

---

[1] Martinez was born on November 21, 1979 (Tr. 389), and was considered to be a younger individual (Tr. 40), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

treatment for a major depressive disorder from the Ponce School of Medicine and INSPIRA Behavioral Care. Through the Disability Determination Program ("DDP"), medical consultants Dr. Benjamin Cortijo and Dr. Carlos Jusino offered their RFC assessments as to Martinez's conditions and the medical evidence on record. The following is a summary of the medical evidence and self-reported symptoms and limitations as contained in the Social Security transcript.

*Treating physicians*

    *State Insurance Fund ("SIF")*

Martinez was treated by the SIF from 2006 to 2011 after feeling a shooting pain in his back while lifting at work. Progress notes show that Martinez was in pain, and that he suffered from a dorsal and lumbar sprain, bilateral S1 radiculopathy, and depression. He was prescribed physical therapy, muscle relaxants, and anti-inflammatory and nerve pain medications (Flexeril, Relafen, Neurontin, and others). Tr. 88-134, 143-190, 475-521, 592-639.

Magnetic resonance images ("MRIs") and x-rays of the spine taken in 2006 showed that Martinez's dorsal and lumbosacral spine was normal, but an electromyographic examination and a nerve conduction velocity study revealed bilateral S1 radiculopathy. Tr. 115-118, 502-505. In 2007, Martinez expressed having pain all the time. Tr. 112, 499. He was seen by a physiatrist, and received physical therapy, but showed decreased range of movement and lumbosacral pain with mild to moderate progress. Tr. 109-111, 129, 496-498, 516. In December 2007, Martinez expressed feeling worse from the pain after physical therapy, and was referred to a neurologist. Tr. 107, 494.

In 2008, Martinez still showed decreased range of movement and lumbosacral pain. Tr. 104, 106, 491, 493. He also felt numbness in both legs and pain on palpation. Tr. 128, 515. In January 2008, Martinez was injected intramuscularly with Depromedrol and Norflex. Tr. 105, 492. Progress notes from March 2008 reflect Martinez's concern regarding his pain ("I am really bothered by the pain in my back and it worries me."). A neurologist found that Martinez had normal strength, could walk on heels and toes, and squat, and concluded that Martinez did not show active radiculopathy and that he could work. Tr. 509. Martinez was discharged from the SIF in June 2008 (Tr. 61, 103, 396, 490),

but on appeal his case was referred back for further evaluation at the pain clinic. Tr. 90, 127, 477, 514.

In 2010, Martinez was referred to an anesthesiologist. Tr. 102, 489. In June, he received Toradol and Kenalog injections, but August progress notes show that Martinez described his pain as strong, deep, constant, and worsening. Pain would increase when standing, bending, or climbing stairs. Pain reduced with rest and sleep. His gait was unsteady, and his ability to flex, extend, toe-walk, and heel-walk were diminished. Tr. 101, 121, 488, 508. In September, Martinez received a lumbar blockage (Tr. 98, 120, 486, 507), and, in November, received a bilateral sacroiliac joint epidural injection. Tr. 90, 92-93, 477, 479-480. Progress notes from October 2010 through February 2011 reflect that Martinez suffered from vertebral and paravertebral muscular pain with range of movement limitations in his lumbar spine. Ultimately, Martinez was found to have diminished ability to perform toe walking, heel walking, and extension, and he was discharged with a partial permanent disability (6% loss of general physiological function). Tr. 89-91, 94, 119, 476-478, 481, 506.

*Centro San Cristobal*

Progress notes from Centro San Cristobal, from 2007-2013, are mostly illegible. Tr. 205-268, 685-707, 708-748. During this time period, Martinez was seen and medicated several times for lower back pain, leg pain and weakness, a muscle spasm, rectal bleeding due to hemorrhoids, and was diagnosed with lumbago. Tr. 697, 706-707, 724-734, 739-745. From 2010 through 2012, he was seen, medicated and referred to surgery for a complicated pilonidal abscess and a left gluteus abscess.[2] He was also seen for back and hip pain, depression, neuropathy, and hemorrhoids. He was diagnosed with lumbago, was prescribed medications, and was pending a psychiatric evaluation. Tr. 687, 694, 696, 700-703, 708-718, 719-722, 739. May 2012 notes show that he had high blood pressure. Tr. 690. In 2013, Martinez was referred to a surgeon due to a dorsal tongue mass and to physical therapy in the lumbar area due to severe back pain, and was prescribed medications. Tr. 688-689, 691-692. A muscle and nerve study by Dr. Yanira Vazquez, dated September 2013, revealed left L5 radiculopathy. Tr. 762-763.

---

[2] He was also treated for a left gluteus abscess in 2007. Tr. 739

*Hospital Damas*

Martinez had a catherization performed in May 2014 by Dr. Carlos Carro ("Dr. Carro). Tr. 773-782.

*Ponce School of Medicine*

Martinez was assisted at Community Cornerstone of Puerto Rico, a crisis center, on August 9, 2010 to help him "control myself." He presented self-harm ideation, and was sad, nervous, and altered. His conditions were triggered by unemployment, economic problems, and his physical conditions. He told staff that watching television, using the computer, and bathing helped him relax. Progress notes from September 16 indicate that, after treatment with medications, he was calm, cooperative, alert, oriented, and free of suicidal and homicidal ideas. Martinez was referred to outpatient treatment, and he expressed being committed to continuing treatment, following the recommendations of the therapist, and calling a help line if needed. He was prescribed medications. Tr. 135-136, 412, 526-530, 640-647.

He continued receiving treatment for his behavioral and emotional problems at the Ponce School of Medicine, from August 2010 to 2013. Tr. 522-531, 758-760. Progress notes in general show that he was anxious, and had thought process disorders, bad mood, and suicidal thoughts. His Global Assessment of Functioning ("GAF")[3] was at 55-60. He was diagnosed with major depressive disorder and prescribed medications. Martinez reported that his medications relaxed him and helped him control himself. One of the medications made him drowsy. Tr. 295-296, 413.

Progress notes from November and December 2010, and March 2011 show that he was calm and cooperative. His mood was depressive and anxious and sometimes euthymic,

---

[3] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" *Hernandez v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 202, 206 f.n. 1 (D.P.R. 2013)(*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)).

"[T]he GAF rating system . . . is not raw medical data; rather, the system provides a way for a mental health professional to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning*.*" *González-Rodríguez v. Barnhart*, 111 Fed. Appx. 23, 25 (1st Cir. 2004) (per curiam) (unpublished) (*citing Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

his affect appropriate, speech normal, and thought process intact. He showed no cognitive difficulties, and no suicidal, homicidal, or psychotic thought content. Tr. 523-525. By December 2010, he was found to have improved in his condition. Tr. 523. He was stable by March 2011. Tr. 524, 586.

However, progress notes from September 2013 show that he was anxious and depressed, with cognitive difficulties in attention and concentration, and his thought content presented ideas of reference and obsessions (although no suicidal or homicidal thoughts). His GAF was at 45-50.

*INSPIRA Behavioral Care*

Martinez also received mental health treatment for major depressive disorder from Dr. Bogart Esparza ("Dr. Esparza") at INSPIRA Behavioral Care, from August 2010 to 2013. Tr. 196-204, 269-277, 411, 650-684, 749-757, 765-772. His prescribed medications included antipsychotics (to treat acute and clinical psychosis), antidepressants (for severe major depression), mood stabilization (to control manic/depressive state and poor impulse control), benzodiazepines (to treat anxiety), and hypnotics (to induce sleep). Tr. 202-204, 662-666. There is evidence that he was discharged twice from hospitalization, on July 12, 2013 (Tr. 650) and on September 5, 2013 (for 5 days), Martinez was discharged and referred to outpatient treatment. The discharge summaries (although mostly illegible) indicate that he had been diagnosed with major depressive disorder, recurrent, severe with psychotic symptoms (diagnostic code 296.34); that he was or had been sad, hostile, and irritable; that his GAF was at 60; and that he was prescribed medications and advised about the importance of continuing treatment at home. Tr. 196, 198, 270, 650-651, 654, 749-750.

***Procedural History***

Martinez applied for disability insurance benefits on March 14, 2012, claiming that a back injury and an emotional condition limited his ability to work. Tr. 389, 417. Martinez was interviewed by a field officer, to whom he claimed having difficulty concentrating, standing, and walking. The field officer observed that Martinez had trouble remembering, difficulty walking and standing up, walked slowly, and had a limp on his left side. His wife helped him remember during the whole interview. Tr. 297, 408.

Martinez claimed in a function report (Tr. 62-71, 294, 424-433) that his conditions affected his ability to get up, squat, bend, and reach, but not to stand, walk, sit, kneel, climb

stairs, use his hands, talk, hear, or see. He could walk 30 feet before needing to stop and rest for five minutes. His ability to remember, concentrate, understand, follow written and spoken instructions, and socialize with others was also affected. He could pay attention for only a few seconds and could not complete tasks.[4] Tr. 68, 430.

Martinez also reported living at home with his wife. He would have breakfast, watch television all day, take his medications, and sleep. Prior to his conditions, he could work, bend over, and take care of himself. His conditions affected his ability to sleep because they produced pain, anxiety, and depression. Now, he felt depressed and needed to be reminded to bathe, care for his hair, and shave. He did not do house chores, shop, or drive because his medication made him forgetful and disoriented. He did not spend time with others (in person, or by phone or computer), and claimed having problems getting along with others because he is bipolar and schizophrenic. Tr. 62-67, 424-430. He handled stress and changes in routine through medication, and was afraid of committing a crazy act or killing someone. Tr. 69, 431.

Martinez's neighbor, Maribel Pabon ("Pabon"), also reported that Martinez was anxious, depressed, had mood swings, and felt severe pain in his body. He moved with difficulty, took his medications, and spent his day lying down, watching television, and sleeping. His wife took care of him and prepared his meals. He had to be reminded to bath, shave, cut his hair, and take his medications. Martinez's brother helped care for his hair. He did not do house chores or yard work because his depression would not allow it. He did not socialize or go out, except once a week to visit his doctor, and did not drive or go out alone because he was disoriented and nervous. He did not handle funds. Tr. 73-77, 294, 434-439.

Pabon added that Martinez's conditions affected his ability to get up, squat, bend, reach, and kneel, but not his ability to stand, walk, sit, climb stairs, use his hands, talk, hear, or see. His conditions also affected his ability to remember, concentrate, follow instructions, and get along with others, but not understand and complete tasks. Tr. 77, 439. Martinez, who is right-handed, could not lift more than one or two pounds. Tr. 78.

---

[4] The function report contains a section where a claimant check-marks the abilities affected by his conditions. The box for "Completing tasks" was not check-marked, but further down, another box asking if the claimant finished what he started was check-marked "No". Tr. 68.

Dr. Benjamin Cortijo ("Dr. Cortijo"), a non-examining consultant, assessed on May 17, 2012 that Martinez's conditions could reasonably be expected to produce pain and other symptoms, but not the extent he claimed. Martinez's statement that he needed to rest after walking thirty feet and could only lift two pounds was not credible and was inconsistent with his own reports on personal care. Dr. Cortijo found that Martinez did have exertional and postural limitations, but retained the RFC to lift/carry twenty pounds occasionally and ten pounds frequently. He could stand and walk for four hours, sit for six hours, and could push and pull unlimitedly. He could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Cortijo found no manipulative, visual, communicative, or environmental limitations. Tr. 299-301, 579.

On May 22, 2012, Dr. Carlos Jusino ("Dr. Jusino"), also a non-examining consultant, reported that the medical evidence showed that Martinez suffered from a non-severe condition of major depression, and that he was alert, well oriented, and with good attention, concentration, and memory. He assessed that Martinez had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. Tr. 298-299, 580.

The claim was denied on May 25, 2012, with a finding that Martinez could not perform past relevant work, but according to his age, education, and prior employment experience, could perform sedentary work. Vocational Rule 201.23 directed to a finding of not disabled, and although he could not perform past work, there were other jobs in the unskilled occupational base that Martinez could perform, such as election clerk (government service), processor (pharmaceutical), or addresser (clerical). Tr. 292, 297-298, 301-303, 319-321.

Martinez requested reconsideration (Tr. 324) and claimed that his conditions worsened since the initial denial of benefits. He was forgetful, unable to do anything, and tried to end his life. Tr. 445. He was aggressive, and did not tolerate being with people. Tr. 449.

The case was referred to psychiatrist Dr. Jose Casiano ("Dr. Casiano") and internist Dr. Pedro Nieves ("Dr. Nieves") for RFC assessments on reconsideration (Tr. 582-585) and

both affirmed in May 2013 the physical and mental assessments submitted at the initial stage as written. Tr. 312.

On May 15, 2013, the claim was denied upon reconsideration, and the original determination was affirmed as written. The examiner noted that no evidence was received at the reconsideration level. Tr. 57, 304-306.

At Martinez's request (Tr. 329), a hearing was held before an ALJ on June 13, 2014. Tr. 30-46. Martinez and Dr. Ariel Cintrón, a vocational expert ("VE"), testified. Tr. 30-46. Martinez testified that he hurt his back while lifting at work, and that despite receiving treatment through the SIF, his pain kept getting worse. Tr. 37. He felt throbbing, stabbing pain in his lower body and needed to shift positions between sitting and standing. He took medications for his back, high blood pressure, cholesterol, and insomnia. He also took medications for his mental health because he saw shadows, heard voices that tell him to kill himself, and has tried to take his own life on a few occasions. Tr. 34-37. He needed to be reminded of things, and did not help clean because he felt pain and was medicated. He was also aggressive, and did not live with his wife because she sometimes feared for her life. Tr. 36. He spent his day lying down and watching television. Tr. 38. When asked if he could work with the public, Martinez answered that he would not be able to because he was aggressive and got upset if people yelled at him. Tr. 39. He did not know for how long he could pay attention or concentrate, or if he could follow simple instructions . Tr. 39.

The ALJ asked the VE whether a young person with limited education, who does not communicate in English, and has a vocational profile of medium and heavy work, unskilled, with the following functional limitations could work: perform light work, alternate positions every two hours (two hours sitting down and two hours standing up, consecutively), and perform unskilled, simple, repetitive work that did not require serving the public. The VE answered that such a person could do light jobs that were unskilled, routine, and repetitive, such as electronic worker (electronic components), plastic hospital products assembler (instruments and apparatus), and gluer. Tr. 41-43.

Martinez's attorney asked the VE if such a person could perform these jobs if he had to alternate every hour instead of in two-hour periods and if credibility was given to Martinez's allegations of severe continuous throbbing pain and psychotic episodes. Tr. 43. The VE answered that he would not be able to perform those jobs in a sustained way. Tr.

43-44. Counsel argued that Martinez's depressive disorder characteristics fit listing 12.04. Tr. 45.

On September 3, 2014, the ALJ found that Martinez was not disabled under sections 216(i) and 223(d) of the Act. Tr. 7-29. The ALJ sequentially found that Martinez:

(1) had not engaged in substantial gainful activity since his alleged onset date of August 10, 2006 through his date last insured of December 31, 2010 (Tr. 15);

(2) had severe impairments (bilateral S1 radiculopathy, high blood pressure, and a major depressive disorder) (Tr. 15);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) (Tr. 16-18);

(4) could not perform past relevant work, but retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he had to alternate positions occasionally (two hours sitting alternating with two hours standing consecutively during an eight-hour work routine), and retained the ability to perform unskilled, simple, and repetitive tasks that did not require dealing with the public (Tr. 18); and

(5) as per his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Martinez could perform (sub-assembler of electrical products, wire worker, and electrical accessories assembler). Tr. 26-27.

Martinez requested review of the ALJ's decision, which the Appeals Council denied on February 5, 2016, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-6. The present complaint followed. Docket No. 2.

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process that based on Martinez's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning of the Act.

Martinez argues that the ALJ erred in finding at step three of the sequential evaluation process that his mental impairment did not meet the criteria of Section 12.04 for

an affective disorder, as contained in 20 C.F.R. § 404, Subpart P, Appendix 1. Under step three of the sequential evaluation process, a finding that the claimant suffers from one of the listed impairments in the social security regulations results in an automatic finding of disability. *See* 20 C.F.R. § 416.920(d). However, the claimant has the burden of producing evidence that he satisfies the criteria for a particular "listed" condition. *Hernandez v. Comm' r of Soc. Sec.*, 989 F. Supp. 2d 202, 208 (D.P.R. 2013) (*citing Mills v. Apfel*, 244 F.3d 1, 6 (1st Cir. 2001)).

For a claimant to show that his impairment matches a listed impairment, he must present medical evidence that meets all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If his impairment or combination of impairments is unlisted, then he must present medical evidence equal in severity to all the criteria for the most similar listed impairment in order to show that his impairment is equivalent to a listed impairment. "A claimant cannot qualify for benefits under the 'equivalency' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531. The Commissioner then has final responsibility for determining whether the claimant has a listed impairment. The Commissioner and her delegates consider both medical sources and non-treating source opinions on whether a claimant's condition equals a listed impairment. 20 C.F.R. §§ 404.1527(d)(2) & (e)(2).

The ALJ evaluated Martinez's mental impairment under Section 12.04 and found that Martinez did not meet or equal the criteria of any listed impairments described in Appendix 1 of the Regulations. Tr. 16-17. Martinez asserts that the medical evidence shows that he suffers from a major depressive disorder, recurrent, with psychotic features and that his impairment meets the criteria of Section 12.04. Mental disorders under this section have criteria organized under three paragraphs (A, B, and C), and in order to be granted disability under step three, the claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00. Martinez specifically argues that his mental impairment meets all the criteria of Listing 12.04.

Martinez first addressed Paragraphs A and C. Paragraph A includes the medical criteria that must be present in the record. Under Listing 12.04, depressive, bipolar, or

related disorders, including major depressive disorder, "are characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00B(3). Martinez believes that the record contains evidence of essentially all of the listed characteristics in section 12.04A(1), which includes depressed mood, diminished interest in almost all activities, appetite disturbance with increase in weight, psychomotor retardation, decreased energy, feelings of worthlessness, difficulty concentration, and thoughts of suicide. However, Martinez does not point to the specific evidence he believes demonstrates this, and the ALJ does not specifically address paragraph A in the step three analysis, either.

Upon reviewing the record, I note that the INSPIRA hospitalization discharge summaries indicate that he had been diagnosed with major depressive disorder, and that the progress notes from the Ponce School of Medicine show that his mood was depressed, that he had difficulty concentrating, was anxious and irritable, and was at times suicidal when not medicated. Martinez self-reported having trouble sleeping, being forgetful, was aggressive to others, and the only activity he would generally do was watch television. As to weight, the ALJ discussed obesity in the decision, weight then being an issue although not a severe condition. I further note that Dr. Jusino's assessment that Martinez's depression was non-severe came at a time in 2012 when Martinez was under continuous treatment (starting in 2010) and was found by a physician at the Ponce School of Medicine to have improved in his condition, but from the record it appears that his progress might have back-tracked in 2013 because he was anxious, depressed, and with difficulty paying attention and concentrating. I am concerned by the fact that there is evidence that Martinez has been suicidal. In my opinion, paragraph A might be worth reviewing on remand. However, paragraph B or C would also have to be met.

Martinez also disagrees with the ALJ's finding that Martinez's condition did not meet the "paragraph C" criteria because there was no evidence showing a residual disease process that had resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would cause Martinez to decompensate, and because there was no evidence of a history of one or more years of inability to function outside a highly supportive living arrangement with an indication of continued need for

such an arrangement. Tr. 18. Paragraph C requires that the mental disorder be serious and persistent, that is, that there be a medically documented history of its existence over a period of at least two years. It also requires that there be evidence of treatment or therapy that diminishes the symptoms and evidence of a minimal capacity to adapt to changes in his environment or to demands that are not part of his daily life. Martinez does not present arguments or specify evidence to support this claim, but there is a medically documented history of over two years, and evidence that he can deal with his mental condition with prescription medications and therapy, as long as he heeds the advice of the importance of continued treatment at home. I thus find that the ALJ's finding that there is no evidence of minimal capacity or inability to adapt to changes to his daily life is supported by the record.

The ALJ also discussed at step three that Martinez's depression did not meet or medically equal the paragraph B criteria of Section 12.04. To satisfy the requirements of Section 12.04, Martinez had to demonstrate that he had at least two of the following restrictions: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The ALJ found that, in activities of daily living, Martinez presented mild restrictions, and even though Martinez reported not doing household chores, yard work, cooking, shopping, or driving, the medical evidence did not support a physical or mental condition severe enough to prevent him from doing light work. Tr. 17. Martinez also had moderate difficulties in social function. While he did not want to share or relate with others, he was found to be cooperative during follow-up medical visits and did not have a history of problems with figures of authority. Tr. 17. He also had moderate difficulties in concentration, persistence, or pace. The ALJ reasoned that while pain could affect concentration, Martinez watched television most of the day, and that activity in the ALJ's opinion required some amount of concentration. Martinez was also described as alert, coherent, and relevant by treating physicians. *Id*. Lastly, Martinez experienced one episode of decompensation, but his mental condition was promptly stabilized and there was no evidence of a need for emergency room treatment or a long hospitalization. Tr. 18.

I am concerned with the ALJ's findings regarding Martinez's difficulties maintaining social functioning because the record contains evidence that Martinez could

be aggressive and hostile towards others, that he had to be medicated to stabilize his mood and for poor impulse control, and that there might be an issue with him continuing treatment on his own. He also testified that his wife sometimes feared him.

I am more concerned by the evidence that Martinez had been at times suicidal. Martinez indicated in his memorandum of three instances when he had to be admitted due to an emotional crisis, which do appear in the record. The ALJ considered one occasion which fell on a date prior to the date last insured, and mentioned in the RFC discussion (but does not consider in the credibility findings) one hospitalization that occurred after the date last insured. Tr. 21. A claimant is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status. *Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986) (per curiam) (citations omitted). Even so, medical evidence generated after the expiration of insured status may be considered, as it may shed light on the question of whether a claimant's impairments reached disabling severity before the insured period expired. *Nieves-Velez v. Comm'r of Soc. Sec.*, 2010 WL 174883, at *5 (D.P.R. Jan. 12, 2010) (*citing Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 81 (1st Cir. 1982)). Nevertheless, even while considering the instances cited by Martinez, these episodes would not fulfill the paragraph B requirement of "repeated episodes of decompensation, each of extended duration," which is defined as three episodes in one year or an average of one over four months, each lasting at least two weeks. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00C(4). Except for one hospitalization which lasted five days, the length of the other two are unclear in the record, and there is no evidence that he suffered three episodes in one year. Because by regulation Martinez would have to have evidence of repeated episodes of decompensation, and because there is evidence that while medicated he is calm, cooperative, alert, oriented, with no cognitive difficulties, and free of suicidal ideation, I find that there is sufficient evidence in the record to support the ALJ's step three finding.

Martinez argues next that the ALJ, in assessing his RFC, did not properly evaluate his symptoms and subjective complaints of severe pain nor fully discuss the following factors when evaluating his subjective complaints, as per *Avery v. Secretary*, 797 F.2d 19 (1986): (1) nature, location, onset, duration, frequency, radiation, and intensity of pain, (2) precipitating and aggravating factors such as movement, activity, and environmental

conditions, (3) type, dosage, effectiveness, and adverse side effects of pain medications, (4) treatment for relief of pain, (5) functional restrictions, and (6) daily activities. Martinez cited his testimony at the hearing to support this claim.

As part of the lengthy RFC analysis, the ALJ addressed the *Avery* factors, including Martinez's self-reported allegations of pain and limitations and longitudinal treatment record, and found that Martinez's determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements concerning intensity, persistence, or functionally limiting effects of pain were not entirely credible based on the record. Tr. 19-22. SSR 96-7p directs the ALJ to consider a claimant's statements regarding pain in light of the entire record and the factors also laid out in *Avery*, and to include specific credibility findings to corroborate or discredit a claimant's pain allegations. 1996 SSR LEXIS 4 at *18-19.[5] I note that the ALJ stated that he would discuss Martinez's symptoms and the physical and mental evidence in the record based on the requirements of 20 CFR 404.1529, SSR 96-4p, and SSR 96-7p, and found that he so did.

The ALJ determined that through the date last insured, Martinez retained the RFC to perform light work, except that he had to alternate positions between sitting and standing every two hours. Tr. 18. The ALJ further found that despite his depression, Martinez retained the capacity to perform unskilled, simple, and repetitive tasks that do not involve working with the public. *Id.* Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds, walking or standing up to six hours of an eight-hour workday, and some pushing or pulling. Light work includes sedentary work, or work that requires lifting no more than ten pounds at a time, sitting for at least six hours out of an eight-hour work day, occasional walking and standing for no more than about two hours a day, and good use of the hands and fingers for repetitive hand-finger actions. 20 C.F.R. § 404.1567(a) & (b); SSR 83-10.

The ALJ noted that, as to Martinez's back condition, Martinez claimed inability to lift, crouch, bend, and walk for long periods of time or distance due to the pain he felt in his back which would become exacerbated by these activities, and that he reported being limited in his daily activities as a result. The SIF record showed that Martinez had

---

[5] SSR 69-7p, which was in effect at the time of the filing of this complaint, was superseded by SSR 16-3p effective March 16, 2016. 2016 SSR LEXIS 4.

decreased range of motion of the lumbar spine and pain at movement, but that the treating neurologist reported that Martinez exhibited normal strength, with no atrophy, or sensory or reflex systems deficits. The SIF record further showed that Martinez's symptoms improved with injections, medications, and therapy. Tr. 21.

In my review for substantial evidence, I found that the SIF record shows that Martinez's physical conditions were progressively getting worse. As noted by the ALJ, Martinez was diagnosed in 2006 with bilateral S1 radiculopathy. In 2007, treating sources noted that Martinez presented decreased range of motion of the lumbosacral spine and pain on palpation. He was continuously treated with physical therapy, muscle relaxants, and pain medications. And, while in 2008 a SIF neurologist found that he no longer presented active radiculopathy and that he had normal strength, could walk on heels and toes and squat, and was fit to work, the ALJ did not mention that in 2009, Martinez was referred back to the pain clinic and ultimately found in 2011 to have diminished ability to toe and heel walk, and extend, and was discharged with partial permanent disability by the SIF. By 2013, he was referred to treatment at Centro San Cristobal for severe lumbar back pain. I further note that there is evidence that Martinez had difficulty standing, walking, and bending because those activities exacerbated his pain, and that he testified that he needed to shift positions between sitting and standing. However, Martinez does not have appear to have impairments with the use of his hands or fingers. He reported so upon applying for disability when asked about his functions, and Dr. Cortijo did not find manipulative limitations in the case record. So, even if Martinez were limited in his ability to perform light work because it requires a good deal of walking, sitting or standing, it appears that he would still able to perform at least sedentary work. The record shows that he has no hand or finger impairments, and sedentary work does not require that he be seated for six unbroken hours without shifting position during an eight-hour work day. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

As to mental impairments, the ALJ cited Martinez's 2010 mental crisis, for which he was stabilized and found to be calm, cooperative, alert, oriented, and free of suicidal and homicidal ideas after treatment with medications and therapy from 2010 to 2011. However, as discussed earlier, there is also evidence from INSPIRA and the Ponce School of Medicine that from 2010 to 2013, under inpatient and outpatient treatment, while his

major depressive disorder was continuously being treated with antipsychotics, antidepressants, and mood stabilizers, his depressive mood, cognitive difficulties in attention and concentration, and aggressiveness or hostility would sometimes be present, for which he was advised of the importance of continuing treatment. Also, his last GAF score of 60 suggested a moderate mental condition. The record suggests that Martinez, with psychotherapy and medications, is able to maintain his mental condition stable, if he sticks to the treatment plan.

I therefore find that the record, as discussed above, substantially supports the ALJ's RFC finding. The RFC discussion also contains numerous credibility findings when addressing Martinez's disability allegations and the medical evidence. Thus, I also find that the ALJ took into account all the *Avery* factors as discussed in this opinion.

It is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence. *See Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). The review of this court is limited to assuring that the ALJ "deployed the correct legal standards and found facts upon the proper quantum of evidence." *Roman-Roman v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 410, 411 (1st Cir. 2004). This court is bound to uphold the ALJ's findings if it is supported by substantial evidence. *Id*. at 411. The above evidence in the record shows that there is substantial evidence from treating and non-examining medical opinions to support the ALJ's RFC finding. The function of weighing evidence and determining if a person meets the statutory definition of disability is the Secretary's, 20 C.F.R. § 404.1527(d), and, as discussed in this opinion, there is substantial evidence in the record to support the ALJ's final determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of October, 2017.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge